Nash, C. J.
 

 The sole question brought to our notice in this case, is “the validity of the order under which the defendants seek to protect themselves. It is a general order, given by the master of the slave, Charles, purporting to authorise him to trade with the defendants, for spirituous liquors,
 
 whenever
 
 fre shall apply for the same during the year 1853. It is no way necessary to enquire, how far the order would protect the defendants in a civil suit by the master, against them, for supplying Charles with ardent spirits, during that year; our present business with it, js to ascertain its legality, in reference to the case before us.
 

 Sis Honor,
 
 below, charged the jury, that trading under this order was unlawful.. In this direction we entirely concur. The order is
 
 null and void,
 
 is in derogation of the letter and spirit of the act of the General Assembly, and conferred no such authority on the defendants as to justify them against the present prosecution.
 

 There are few subjects of legislation in this State, more , interesting to the community at large, than the regulation of the conduct and the protection of our slave population. Constituting our domestics, and admitted to all the privacies of the domestic circle ; constituting a large portion of the wealth of the State, and of its individual citizens, it needs be, that they should be guarded well, both as moral agents and as objects of property. With this view was the act passed, under which this indictment is framed. It was intended to guard the interest of the community against the Vice and crime, the disorder and insubordination, which would grow out of an unlimited indulgence by our slaves in procuring ardent spirits; to secure the interests of the
 
 *61
 
 ■owner, in the health and strength and obedience of his slave, and to protect "the slave himself, in his moral health, ■.against the allurements held out to him.
 

 The act we are considering, is a police regulation, and should receive from the Court such construction, as will carry out the views of the Legislature, to be gathered from the law itself. The order relied upon here, is not such an one, we are satisfied, as was within the contemplation of the Legislature. If this order be a legal one, let us see to what it directly leads. The license is for one year; if good, it would be equally .so for two, three, four, or any indefinite time. Now, if .Mr. Norfleet can give Charles a license; then, Mr. A., Mr. B., and Mr. C., and so -on through the alphabet, can each-give one of their slaves a similar one. And Mr.. Norfleet is not .-confined to his man Charles, but, if he 1ms fifty, each one may be similarly furnished, .and so may ■every negro in the community, by -his respective owner or -overseer. What would be the probable effect of such a system. It needs no strength of fancy'to depict its evils, and would amount to a repeal -of the law. v ■
 

 It is, hcwever, said, in argument, that to give to tins mrder the ..construction we have, is to abridge the rights of the master over'the slave. We do not think so; at any rate dt is his duty, in exercising .his rights, not to infringe those *of the community. The argument would equally apply to .-giving a written prder; a verbal one, so far as his rights are -concerned, hut .for .the act of the Assembly, would protect ■;the .trader. It is further said, that the master .of .Charles might have printed orders for Charles, for every hour in the fday and in the year. If they are .all delivered to the slave .at the same time, their being on separate pieces .of paper .would not make them better, than if written, as the one we .are consideringis.,.and, if similar in.their terms, would he of no more worth than the paper they are printed on. The act forbids all trafficing with slaves on Sundays; hut authorises the
 
 *62
 
 trading in the day time, between the rising and setting of' the sun, where it is done for the slave; provided, the slave has a permission in writing from his master, or overseer. The owner cannot, under this law, authorise his slave, by writing or otherwise, to traffic on Sunday, or at night. Now, the order in question, if legal, authorises the defendants to sell to Charles, ardent spirits, both on Sunday and at night. The language is, “
 
 whenever he shall apply for the same.”
 

 But, again, it is manifest from the wording of the act, that a permission in writing must be given for each distinct act of trading. The act says, that any person may in the day, “buy or traffic with, or receive from any slave any such article, &c., for which he may have a permission in writing from his owner, or manager,
 
 to dispose of the same.”
 
 To authorise the buying from a slave any thing enumerated in the act, the written permission must specify the article, or articles, so by him to be sold. Th'e closing language of the section, is to the same purpose.
 

 We think the act, then, intended, that there should be a permission in writing for each act of trading. This view of the act, is fortified by the opinion of the Court in State v. Hart, 4th Ired. 249. His Honor, the late Chief Justice, in delivering the opinion of the Court, uses this language, speaking of the act: “ The purposes were to remove all doubt, in every, case upon the question of fact, whether the owner gave his consent to
 
 tke particular
 
 trading, &c.”